IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL THOMAS LIPSCOMB,    )<br>    Plaintiff,    )<br>    )<br>v.    )<br>    )<br>CLAY A. CORBIN, *et al.*,    )<br>    Defendants.    ) | Civil Case No. 7:22-cv-00511<br><br>By: Elizabeth K. Dillon<br>    United States District Judge |

**MEMORANDUM OPINION**

Daniel Thomas Lipscomb, a Virginia inmate proceeding *pro se*, has filed a complaint under 42 U.S.C. § 1983, alleging that defendants have violated his constitutional rights by denying him the opportunity to see an optometrist so he can receive prescription glasses. Lipscomb names eight defendants, who are properly considered in two groups. First, there are two defendants (Captain G. Hurlock and Nurse Seymour), both of whom work at Prince Williams Adult Detention Center (PWADC). The remaining defendants interacted with Lipscomb at the Northwestern Regional Adult Detention Center (NRADC), where he is currently housed. These defendants (collectively the NRADC Defendants) are Clay A. Corbin, Captain Tana Jones, LPN Kovak, Nurse A. Tanner, Practitioner Robert Dryden, and Captain Heath Custer.

The case is before the court for review under 28 U.S.C. § 1915A(a). For the reasons set forth herein, Lipscomb's claims against defendants Hurlock and Seymour will be dismissed.

I.  BACKGROUND

Lipscomb began wearing glasses in 2012. While at PWADC in 2018, he was seen by an outside optometrist and was prescribed glasses. He left PWADC in August 2019.[1]

---

[1] Based on information obtained in other cases brought by Lipscomb, Lipscomb was released from custody and began a term of probation. He later was accused of violating probation and was arrested.

On January 24, 2020, he was admitted to NRADC. During the medical intake session, Lipscomb completed paperwork stating that he wears glasses, but he did not have them in his possession. He later began submitting sick call requests asking to have his eyes examined and asking for glasses. He claims that the lack of corrective eyewear is causing him a number of symptoms. These include a "stabbing pain" in his right eye, an inability to see even "five feet in front of" him, seeing double, blurry vision in both eyes, and headaches from straining to see. (Compl. at 3, 5, Dkt. No. 1.) He also alleges that his eyesight is getting worse. (*Id.* at 5.) Further, despite repeated requests to be taken to an optometrist and despite grieving the denial of his requests, he has not been taken to an optometrist or received glasses.[2]

In his first claim, Lipscomb asserts that all of the defendants have violated his Eighth Amendment and Fourteenth Amendment rights by being deliberately indifferent toward his serious medical need for prescription glasses. His complaint describes his second claim as: "Violation of 14th Amendment Due Process, pretrial detainee Rights. Equal Protection. There has been other people held at NRADC that have been take[n] to eye doctors." (Compl. 2.)[3]

## II. DISCUSSION

Under 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in

---

[2] According to a response to his grievance from Captain Jones, Lipscomb may obtain an appointment with an optometrist if he pays the cost and transportation cost, but he is not entitled to the NRADC paying for such an appointment because his "[b]lurred vision (myopia) is not a serious medical condition" and he has "no prior diagnosis of a serious medical condition involving [his] eyesight." (Dkt. No. 1-1, at 2.)

[3] Lipscomb identifies himself as a pretrial detainee in his complaint, although the issue of his status has arisen in other cases he has filed and poses an interesting legal question. *See, e.g., Lipscomb v. Whitley*, No. 7:20CV00411, 2022 WL 2680614, at *6 (W.D. Va. July 12, 2022). Assuming he is a pretrial detainee as he claims, the Fourteenth Amendment, not the Eighth Amendment, governs his claim concerning the denial of medical care. *Mays v. Sprinkle*, 992 F.3d 295, 300 (2021). The Eighth Amendment standards have previously been adopted in addressing such claims, although there is a circuit split as to whether *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), has altered that standard for pretrial detainees. *See Mays*, 992 F.3d at 301 & n.4 (explaining the split and collecting authority). In *Mays*, the Fourth Circuit declined to resolve the issue because the case before it did not require it to do so. *See id* at 300–01. Similarly, because the court's resolution of Lipscomb's claims herein would be the same under either standard, it is not necessary to resolve the issue here.

a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2)(B) (requiring court, in a case where a plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted). Pleadings of self-represented litigants are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

To demonstrate deliberate indifference of a constitutional magnitude, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"

and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Gordon v. Schilling*, 937 F.3d 348, 356–57 (4th Cir. 2019). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).[4]

As to the first element, the court will assume, without deciding at this point, that Lipscomb's need for eyeglasses, in conjunction with his headaches and stabbing pain in his eyes, constitutes an objectively serious medical need. *See Goodman v. Runion*, 676 F. App'x 156, 160 (4th Cir. 2017) (taking same approach in case involving moderate myopia and headaches allegedly caused by eyeglasses). All of the NRADC Defendants are alleged to have played some role in the denial of medical care for Lipscomb's vision and eye-related symptoms, and he references specific interactions with all of them. Thus, the court will direct that they be served with the complaint.

As for the two PWADC defendants, however, their involvement is much more limited. Lipscomb alleges that after he requested that NRADC personnel obtain information about his glasses prescription from PWADC, someone called and spoke with Nurse Seymour in January 2022. Lipscomb was later told that Seymour had advised NRADC personnel that there was not a prescription or anything about Mr. Lipscomb's glasses on file. (Compl. 4.) He says that this was untrue, pointing to the fact that he was taken to an optometrist from PWADC in January 2018. He further alleges that Seymour's refusal to provide that information is interfering with his treatment.

Lipscomb later wrote to the PWADC medical department asking for the information of the optometrist, so he could request new glasses. He also mailed a letter to Captain Hurlock

---

[4] It is also possible (but undetermined in the Fourth Circuit) that the second component could be an objective inquiry, post-*Kingsley*. *See supra* note 2.

requesting a grievance and information about the optometrist's name. Lipscomb states that he did not receive a response to either letter. (Compl. 4–5.)

Summarized, then, Lipscomb alleges that both Seymour and Hurlock, in 2022 and when Lipscomb was no longer in their care, failed or refused to provide information to Lipscomb or to NRADC personnel about a prescription he obtained in 2018 or the optometrist's name. These allegations against Seymour and Hurlock fail to state a constitutional violation. A failure to respond to a letter from a former prisoner or to provide his medical records for free does not violate that prisoner's constitutional rights to constitutionally adequate medical care. Moreover, although Lipscomb states that their failure to respond has interfered with his medical treatment, there is no evidence that their failure to provide the information was deliberate, nor does he allege that they would have maintained those medical records for a prisoner released from their care years before.

Importantly, and even if the conduct was deliberate, Lipsomb does not allege facts to show that their failure to respond to his letters or to provide the old information about his medical care, without more, resulted in him being denied glasses, or that either defendant knew it would result in the denial of glasses. Instead, it appears that NRADC personnel are the immediate cause of him not seeing an optometrist or obtaining glasses. Put differently, nothing in his complaint plausibly suggests that, if the prescription information had been obtained from PWADC, NRADC would have paid for glasses for him based on that four-year-old prescription.

For these reasons, the court concludes that Lipscomb has failed to state a claim against either Seymour or Hurlock, and they will be dismissed.

## III.  CONCLUSION

To summarize, the court will dismiss without prejudice defendants Seymour and Hurlock. By separate order, the Clerk will be directed to effect service on the other three defendants, and an appropriate order will be issued.

Entered: December 5, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge