IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL THOMAS LIPSCOMB,            )<br>　　　Plaintiff,　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　　　　)<br>CLAY A. CORBIN, *et al.*,　　　　　　　)<br>　　　Defendants.　　　　　　　　　　　)  | Civil Case No. 7:22-cv-00511<br><br>By: Elizabeth K. Dillon<br>　　　United States District Judge |

**MEMORANDUM OPINION**

Daniel Thomas Lipscomb, a Virginia inmate proceeding *pro se*, has filed a complaint under 42 U.S.C. § 1983, alleging that defendants have violated his constitutional rights by denying him the opportunity to see an optometrist so he can receive prescription glasses. The court previously dismissed two of the eight defendants named by Lipscomb (Dkt. No. 12, 13) and the remaining six have filed two separate motions to dismiss. Specifically, defendants Clay A. Corbin, Captain Tana Jones, LPN Kovak, Nurse A. Tanner, and Captain Heath Custer (collectively the NRADC Defendants) have filed a joint motion to dismiss (Dkt. No. 30), and defendant Practitioner Robert Dryden has filed a separate motion (Dkt. No. 38). Also pending before the court are a number of motions from Lipscomb seeking preliminary injunctive relief or other relief. (Dkt. Nos. 10, 11, 16, 17, 46, 50.)

For the reasons set forth herein, the court will grant both motions to dismiss and dismiss all claims against all of the remaining defendants. The court also will deny as moot Lipscomb's various other motions for relief.

I.  BACKGROUND

According to his complaint, Lipscomb began wearing prescription eyeglasses in 2012. While housed at a different detention center in 2019, he was seen by an outside optometrist and

again was prescribed glasses.

On January 24, 2020, Lipscomb was admitted to NRADC. During the medical intake session, Lipscomb completed paperwork stating that he wears glasses, but he did not have them in his possession. In November 2021, he began submitting requests asking to obtain glasses or his prescription from his prior place of incarceration. He later began asking to have his eyes examined. He claims that the lack of corrective eyewear is causing him a number of symptoms. These include a "stabbing pain" in his right eye, an inability to see even "five feet in front of" him, seeing double, blurry vision in both eyes, and headaches from straining to see. (Compl. 3, 5, Dkt. No. 1.) He also alleges that his eyesight is getting worse. (*Id.* at 5.)[1] Further, despite repeated requests to be taken to an optometrist and despite grieving the denial of his requests, he has not been taken to an optometrist or received glasses.[2] According to his complaint, Lipscomb may obtain an appointment with an optometrist if he pays the cost and transportation cost. (*Id.* at 6.) Captain Jones responded to one of Lipscomb's grievances by stating that Lipscomb is not entitled to have the NRADC pay for such an appointment because his "[b]lurred vision (myopia) is not a serious medical condition" and he has "no prior diagnosis of a serious medical condition involving [his] eyesight." (Dkt. No. 1-1, at 2.)

On August 2, 2022, Lipscomb was seen by Practitioner Robert Dryden for his vision complaints. Dryden did not refer him for any further medical care, but he encouraged Lipscomb

---

[1] In a document filed more recently with the court, Lipscomb asserts that he has a "detached retina," but that fact is not alleged in his complaint, and a party may not amend his complaint through briefing. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). Accordingly, the court does not treat that allegations as part of his complaint. *See id.* Moreover, the court disagrees with Lipscomb's assertion that his complaint's reference to having a "white sheet" over his right eye is a clear and obvious reference to a detached retina.

[2] Notably, documents Lipscomb has attached to his complaint, as well as records attached to the NRADC's Defendants' motion to dismiss, show that NRADC officials have repeatedly offered to allow him to see an optometrist at his own expense (*see, e.g.*, Dkt. No. 1-1, at 2), but he has not taken advantage of that opportunity. He apparently believes he should be able to see an optometrist and obtain prescription eyeglasses at no cost to him.

to purchase reading glasses and seek routine optometric care. Dryden also told Lipscomb that he would look for his old eyeglasses prescription at the place where Lipscomb previously was detained when he was next there. Apparently, though, Dryden was unsuccessful in obtaining any past prescription.

In his first claim, Lipscomb asserts that all of the defendants have violated his Eighth Amendment and Fourteenth Amendment rights by being deliberately indifferent toward his serious medical need for prescription glasses. His complaint describes his second claim as: "Violation of 14th Amendment Due Process, pretrial detainee Rights. Equal Protection. There has been other people held at NRADC that have been take[n] to eye doctors." (Compl. 2.)

## II.  DISCUSSION

**A.  Legal Standard for Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

B.  **Deliberate Indifference**

   1. **Applicable Law**

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019).[3] To demonstrate deliberate indifference, an inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The first component is an objective inquiry and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To qualify as deliberate indifference, the defendant's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

   3. **Lipscomb Has Not Alleged an Objectively Serious Medical Need**

The NRADC Defendants and Dr. Dryden argue in their motions that Lipscomb's deliberate indifference claim fails both because he has not adequately alleged a serious medical

---

[3] As noted in the court's prior opinion, Lipscomb asserts that the is a pretrial detainee, not a convicted prisoner. If he is a pretrial detainee as he claims, then the Fourteenth Amendment, not the Eighth Amendment, governs his claim concerning the denial of medical care. *Mays v. Sprinkle*, 992 F.3d 295, 300 (2021). Some circuits have held that the standard is different (and easier) for plaintiffs under the Fourteenth Amendment. *See* Mem. Op. 2 n. 3, Dkt. No. 12 (citing to *Mays*, 992 F.3d at 301 & n.4 for a discussion of a circuit split on the issue and collecting authority)). But even if the standard is different, it is only the second prong of the analysis that is different, and the court's decision here is based on the first prong. Under either the Eighth Amendment for a convicted prisoner or the Fourteenth for a pretrial detainee, the plaintiff must establish that he has an objectively serious medical need. *See Mays*, 992 F.3d at 300–01 & nn.3–4 (discussing standards for both and noting that the Fourteenth Amendment standard adopted in some circuits requires two objective prongs, therefore only changing the analysis from an Eighth Amendment claim under the second prong).

need and because he has failed to adequately allege deliberate indifference by any of them. The court agrees that he has not alleged a serious medical need and his medical claims fail on that basis alone. Thus, the court does not reach the other arguments offered by defendants.[4]

In its initial screening of this complaint, the court "assume[d], without deciding at this point, that Lipscomb's need for eyeglasses, in conjunction with his headaches and stabbing pain in his eyes, constitutes an objectively serious medical need. *See Goodman v. Runion*, 676 F. App'x 156, 160 (4th Cir. 2017) (taking same approach in case involving moderate myopia and headaches allegedly caused by eyeglasses)." (Mem. Op. 4, Dkt. No. 12.) But at this stage, the defendants have moved for dismissal, among other reasons, on the grounds that Lipscomb has not alleged a serious medical need, and the parties now have had the opportunity to brief that issue.

First of all, as defendants note, Lipscomb arrived at the jail without his prescription glasses. Despite this, as defendants note, he has not asked for someone outside the jail to bring him his glasses. Instead, after NRADC staff were unable to obtain his prior eyeglasses prescription, he has requested to see an optometrist. Optometrists prescribe eyeglasses, and they are not medical doctors. Thus, the fact that an optometrist previously said he needed prescription glasses does not mean that he has a health condition diagnosed by a *physician*. Indeed, Lipscomb saw a medical practitioner—Dryden—who did not find any problem with the *health* of Lipscomb's eyes. Instead, Lipscomb is effectively alleging that he has ordinary myopia, a common problem among a large portion of the U.S. population.[5]

---

[4] Defendants also contend that Lipscomb failed to plead sufficient personal involvement by most of them and that they are entitled to qualified immunity.

[5] *Myopia: A close look at efforts to turn back a growing problem*, Nat'l Institute of Health, Nat'l Eye Institute (Oct. 3, 2017), https://www.nei.nih.gov/about/news-and-events/news-myopia-close-look-efforts-turn-back-growing-problem.

5

Defendants have cited to numerous cases squarely addressing whether myopia or the need for vision correction is a serious medical need, and the overwhelming consensus among courts is that ordinary myopia does not qualify as a serious medical need. *See, e.g.*, *West v. Higgs*, No. 1:07cv759, 2008 U.S. Dist. LEXIS 24395, at *18 (E.D. Va. Mar. 24, 2008) (reasoning that plaintiff's allegations that his myopia symptoms such as blurry vision and eye strain, which he alleged caused "severe" headaches and depth perception problems that were worsening, did not adequately allege a serious medical need); *Glass v. Hunter*, No. Civ. A. 04-3353, 2005 WL 1501019, at *3 (E.D. La. June 22, 2005) (recognizing that a severe vision impairment may constitute a serious medical need but that less severe vision impairments-- including "moderate nearsightedness"—do not, and collecting authority for the proposition)*;* *Roddy v. McBride*, 59 F.3d 173, 1995 WL 377062, at *1–2 (7th Cir. June 23, 1995) (affirming dismissal of claim where the plaintiff was refused an appointment with an eye specialist, causing his eyesight to deteriorate, in part because the deterioration was not a serious medical need); *Bellah v. McGinnis*, No. 94-1704, 1994 U.S. App. LEXIS 39163, *4 (6th Cir. Nov. 23, 1994) ("[Plaintiff's moderate nearsightedness does not constitute a serious medical need."). This court, too, has reached the same conclusion. In *Mahon v. Kilgore*, No. 7:17-cv-00406, 2018 WL 4655756, at *10 (W.D. Va. Sept. 27, 2018), the court reasoned that a plaintiff's complaint of routine headaches, which was "at best presented to a few of the medical defendants as related to eye strain" did not constitute a serious medical need.

The few courts that have held otherwise involved facts that are easily distinguishable. For example, in *Koehl v. Dalsheim*, 85 F.3d 86 (2d Cir. 1996), the court found a serious medical need related to the plaintiff's vision. But there, the plaintiff was nearly blind, had severe double vision, and a significant loss of depth perception from a prior injury. *Id.* at 88. Taken together,

6

these vision impairments had caused him to fall or walk into objects, suffering injuries as a consequence. *Id.* Moreover, in *Koehl*, a prison physician had evaluated the plaintiff and wrote him a pass to wear specialized glasses, but prison officials refused to allow him to wear them. The symptoms alleged by Lipscomb are not nearly as severe and here, no physician—only an optometrist—has recommended glasses for Lipscomb.

Similarly, the court in *Benter v. Peck*, 825 F. Supp. 1411, 1416–17, 1419 (S.D. Iowa 1993), held that plaintiff had a serious medical condition where he was legally blind, had 20/400 vision, and needed eyeglasses to work or function in the general prison population. By contrast, Mr. Lipscomb does not allege that he is unable to function in the prison environment and, in particular, does not identify any specific functional challenges or limitations caused by his vision.

Upon consideration of all of the foregoing authorities, the court agrees with defendants that Lipscomb's myopia is not a serious medical need. Thus, the court will grant both motions to dismiss and dismiss all claims against all defendants.

On a final note, the court echoes the sentiments of the *Glass* Court, which also dismissed the plaintiff's claims seeking eyeglasses. Like that court, this court "is not unsympathetic to plaintiff's plight" and recognizes that prescription eyeglasses likely would improve Lipscomb's "quality of life." 2005 WL 1501019, at *4. "However, the issue before this Court is not whether plaintiff could benefit from prescription eyeglasses." *Id.* Rather, the issue is whether defendants' alleged conduct here violates the United States Constitution, and the court finds that it does not. Like the *Glass* Court, then , the court notes that while "it would be laudable if prison officials provided plaintiff with prescription eyeglasses, the Constitution does not require such magnanimity." *Id.*

## C. Equal Protection Claim

Lipscomb's complaint also includes a cursory claim that his Equal Protection rights have been violated because NRADC has permitted other inmates to see an optometrist and obtain glasses. To prove an equal protection claim, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Two groups of persons are "similarly situated" only if they "are similar in all" relevant respects. *Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). Once such a showing is made, then the court will determine "whether the disparity in treatment can be justified under the requisite level of scrutiny." *Veney*, 293 F.3d at 731 (quoting *Morrison*, 239 F.3d at 654).

Lipscomb makes a vague reference to other prisoners being taken to eye doctors, but he does not provide any factual support for that assertion in his complaint. For example, he does not identify the names of any such prisoners, the conditions for which they received treatment, or whether they were sent to an optometrist or ophthalmologist. Notably, moreover, he does not allege that any prisoners were taken to the optometrist for new glasses at the jail's expense, which is the relief he seeks.

In his response to the NRADC Defendants' motion to dismiss, Lipscomb identifies that another prisoner, Mr. Cromwell, "had Pink eye and was sent for 3 optometrist visits." That information is not contained within his complaint, however. *See S. Walk at Broadlands Homeowner's Ass'n*, 713 F.3d at 184–85. (explaining that pleadings may not be amended through briefing on a motion). Even if the court were to consider this additional allegation as part of his complaint, it would not save his claim from dismissal. Pinkeye is a highly contagious

8

infection and a medical issue, distinct from myopia. Thus, Mr. Cromwell is not "similarly situated in all respects" to Mr. Lipscomb. *See Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).

In light of his failure to provide any factual allegations to show that he was similarly situated to any other prisoner with regard to his requests for an optometrist visit and glasses at NRADC's expense, Lipscomb has failed to plausibly allege an Equal Protection claim.

### III. LIPSCOMB'S REQUESTS FOR INJUNCTIVE RELIEF

Lipscomb also has filed repeated motions seeking injunctive relief. Many of these relate to his request for eyeglasses or an optometrist appointment. Those motions include motions for preliminary injunctions, a motion for a medical examination, and a discovery motion, and they will be denied as moot in light of the court's dismissal of all of his claims. Others of his motions complain of actions by defendants or others that are unrelated to the relief he seeks in this case. (*See, e.g.*, Mot. for Prelim. Inj., Dkt. No. 50 (alleging that his life is in danger, that he reported an officer who is bringing in drugs to the facility, and that he wants to report other criminal information but is being "forced not to").) No injunctive relief can be awarded that is unrelated to the relief sought in the complaint. *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action."). To the extent that Lipscomb believes his constitutional rights are being violated by any of the incidents described in his motions, however, he may file a new and separate action based on them.

For the foregoing reasons, all of Lipscomb's other pending motions will be denied as moot.

## IV.  CONCLUSION

To summarize, the court will grant defendants' motions to dismiss, dismiss Lipscomb's complaint for failure to state a claim, and deny without prejudice as moot Lipscomb's numerous motions.  An appropriate order will be issued.

Entered: August 14, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge